**Richard Eddie MAY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. C–88–217.**

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1990.

## ORDER DENYING CERTIORARI

Appellant Richard Eddie May was charged by Information in the District Court of Washington County with Unlawful Distribution of a Controlled Dangerous Substance (Cocaine), Case No. CRF–87–160. At a hearing before the Honorable John G. Lanning, District Judge, on October 7, 1987, Appellant entered a plea of guilty. The trial court accepted the plea and sentenced Appellant to five (5) years imprisonment and a five hundred ($500.00) dollar fine. Appellant filed a motion to withdraw the guilty plea, which was denied on January 14, 1988. That denial is the subject of this appeal.

In his first assignment of error, Appellant contends that the trial court failed to fully inform him of the possible range of

punishment. On October 7, Appellant appeared before the trial court to enter a plea of guilty to four separate charges. The State presented evidence of a prior drug conviction and argued that Appellant was therefore not entitled to a suspended sentence in CRF–87–160 pursuant to 63 O.S. Supp.1984, § 2–401(B)(1). That section provides in pertinent part:

> B. Any person who violates the provisions of this section with respect to:
> 1. A substance classified in Schedule I or II which is a narcotic drug.... shall, upon conviction, be guilty of a felony and shall be sentenced to a term of imprisonment for not less than five (5) years nor more than life and a fine of not more than One Hundred Thousand Dollars ($100,000.00). Said sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences, or probation except when the conviction is for a first offense.

Finding the State's argument was better reserved for the sentencing hearing, the trial court proceeded to take the Appellant's plea. Addressing the range of possible punishment the following colloquy took place:

> THE COURT: And I'd ask you on CRF 87–160, you understand that if you plead guilty you'll be subject to a minimum punishment of—
>
> MR. CORGAN: Five years, Your Honor.
>
> THE COURT: A maximum punishment of—
>
> MR. CORGAN: Life and a $100,000 fine.
>
> THE COURT: Do you understand that range of punishment, Mr. May?
>
> MR. MAY: Yes, Your Honor.
>
> THE COURT: And you further understand that it's at least the State's position and you can assume it's correct for purposes of entering pleas today anyway that probation is not permitted?
>
> MR. MAY: Yes, Your Honor.
>
> (Tr. 24)

The trial court also informed Appellant that as he was entering a blind plea of guilty, with no recommendation as to punishment from the State, the punishment could be anything from the minimum to the maximum. Appellant and defense counsel both indicated that they had discussed the range of punishment. (Tr. 15–16) We find that under this scenario, the trial court met the guidelines of *King v. State*, 553 P.2d 529, 534 (Okl.Cr.1976), as further defined in *Ocampo v. State*, 778 P.2d 920 (Okl.Cr. 1989), and informed Appellant of the statutory range of punishment. This allegation of error is denied.

In his second assignment of error, Appellant argues that our previous decision of *State of Oklahoma ex rel Macy v. Owens*, 717 P.2d 1141 (Okl.Cr.1985), has "interpreted [63 O.S. Supp.1984, § 2–401(B)(1) ] in an unconstitutional manner, thereby causing [Appellant] to suffer double jeopardy and cruel and unusual punishment and depriving him of equal protection and due process of law." (Appellant's Brief, page 7). In *Macy v. Owens*, Michael Carmody pled guilty to a charge of Distribution of a Controlled Dangerous Substance (Marijuana). When the respondent announced his intention to grant a suspended sentence, the State objected and argued that Carmody was not entitled to a suspended sentence under 63 O.S. 1981, § 2–401(B)(2) and 2–412 because of a prior conviction for Unlawful Possession of Marijuana, for which he received, and successfully completed, a one-year deferred sentence. Respondent rejected the State's argument and imposed a suspended sentence. On appeal, this Court reconciled any discrepancies between Section 2–401(B)(2) and Section 2–412 concerning whether a deferred sentence could be considered a prior conviction for purposes of the Uniform Controlled Dangerous Substances Act and held that the respondent erred in granting Carmody a suspended sentence. We stated in pertinent part:

> ... it is apparent to this Court that the Legislature intended to render ineligible for a suspended sentence any person who had previously received a deferred sentence for a drug offense. We reach this conclusion by a careful reading of the Uniform Controlled Sub-

stance Act ... § 407, which served as a model for section 2–410....

We believe the above-reasoning reveals' that the Legislature intended to disentitle a person who previously pled guilty or was adjudicated guilty of a drug related offense from being eligible for a suspended sentence, regardless of whether the judgment and sentence was deferred. 717 P.2d at 1142–43.

Appellant's arguments of violations of due process, equal protection and double jeopardy are based upon a comparison of Section 2–401 and the provisions of 22 O.S. 1981, § 991a(B), which makes defendants convicted of a third or subsequent felony conviction ineligible for a suspended sentence. Appellant argues that under *Macy v. Owens* violent offenders are treated differently than non-violent drug offenders. Both Section 2–401 and Section 991a are attempts by the Legislature to deal with the problem of repeat offenders. While not condoning this potential statutory distinction between violent and non-violent offenders, we find that the different treatment accorded repeat drug offenders and repeat non-drug offenders is not violative of equal protection. In *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the United States Supreme Court stated the standard for testing equal protection claims:

"... Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some group of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective, State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it..." (Citation omitted, footnote omitted.)

Applying this standard to the present case, we find that the classification of repeat drug offenders bears a rational relationship to an important legislative objective, i.e. protection of the public.

 Appellant does not specify exactly how Section 2–401 violates the guarantees of due process of law. It is well established that due process requires that the statutory language convey sufficient definite warning as to the proscribed conduct when measured by common understanding and practice. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Hildahl v. State*, 536 P.2d 1292, 1295 (Okl.Cr.1975). In a criminal trial reasonable notice of the charges and an adequate opportunity to defend against them are basic elements of due process. *Bruner v. Myers*, 532 P.2d 458, 461 (Okl.Cr.1975). Section 2–401 specifically states that second and subsequent violations of the Controlled Dangerous Substances Act will not be subject to the statutory provisions for suspended or deferred sentences. Further, *Macy v. Owens* appropriately resolved any apparent contradictions between the provisions of Sections 2–401, 2–410 and 2–412, thereby giving force and effect to the intent of the Legislature that repeat drug offenders should be subjected to increasingly harsh sentences.

 Turning to the issue of double jeopardy, the Double Jeopardy Clause of both federal and state constitutions protects against two (2) distinct abuses: 1) requiring the accused to endure a series of trials where the same offense is charged and 2) the infliction of multiple punishments for the same offense. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Ocampo v. State*, 778 P.2d 920 (Okl.Cr.1989). Here, Appellant is not being punished for a previous offense, but rather for his persistence in crime. To hold otherwise would defeat the very purpose of the penalty provisions of the Controlled Dangerous Substances Act and the Habitual Offender Act. *See Fischer v. State*, 483 P.2d 1162, 1164 (Okl.Cr.1971). Therefore for all the reasons set out above, it is our opinion that *Macy v. Owens*, and the interpretation and application of 63 O.S.

Supp.1984, § 2–401, is constitutionally and authoritatively sound. Finding Appellant's arguments to the contrary unpersuasive, this assignment of error is denied.

█ In his final assignment of error, Appellant alleges that the trial court's failure to inform him of the elements of the crime with which he was charged and the failure to specifically apprise him of the possible defense of entrapment prevented him from entering a voluntary plea of guilty. Appellant cites as authority *King v. State,* and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); specifically Note 5 from *Boykin* which states that a guilty plea cannot be truly voluntary until the defendant possesses an understanding of the law in relation to the facts. We find that Appellant's argument is based upon a misreading of the above cited cases. The note upon which Appellant relies is a quote from *Johnson v. Zerbst,* 304 U.S. 458, 464, 466, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), found in the discussion that for a waiver to be valid under the due process clause, it must be an intentional relinquishment or abandonment of a known right or privilege. In *Boykin,* Note 5 is found in a similar discussion of the federal constitutional rights which are involved in a waiver that take place when a plea of guilty is entered in a state criminal trial. The rights included are the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury and the right to confront one's accussers. *Boykin* does not extend the principle of the basis for an intelligent waiver of known rights and privilege to a full and complete understanding of the intricacies of a criminal defense. Further the *King* guidelines do not require the trial court to explain the elements of the criminal charge to the defendant or to discuss any possible defenses. The *King* guidelines as further defined in *Ocampo* are to ensure that the defendant understands the nature of the criminal charges against him, and the consequences of pleading guilty instead of going to trial. Explaining the elements of the criminal charge, together with the possible defenses, is a matter left to the realm of the defense counsel and the trial court is not required to address those matters to have a valid plea of guilty. In the present case, the Appellant was thoroughly examined as to his understanding of the charges against him and the consequences of the guilty plea. A factual basis was established with Appellant explaining the circumstances surrounding the offense. Further, the plea was taken approximately two months after the Preliminary Hearing. We find nothing in the record to indicate that Appellant's plea was anything less than voluntarily and intelligently entered. Therefore we refuse to grant relief on this allegation of error.

Finding no abuse of discretion, the order of the District Court denying Appellant's motion to withdraw a plea of guilty is AFFIRMED and CERTIORARI IS DENIED.

IT IS SO ORDERED.

(s) Tom Brett
 TOM BRETT, JUDGE

(s) Gary L. Lumpkin
 GARY L. LUMPKIN, JUDGE

(s) Charles A. Johnson
 CHARLES A. JOHNSON, JUDGE